IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

DALE DUGGER,
      Petitioner,

v.

WILLIAM WIENER, et al.,
      Respondent.

CASE NO.   2:07-cv-2674 BJR

ORDER DENYING PETITION FOR
A WRIT OF HABEAS CORPUS

## INTRODUCTION

Petitioner Dale Dugger is a California state parolee proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2005 conviction on charges of resisting arrest and attempting to inflict injury on a peace officer in the performance of his duty. Petitioner seeks relief based on allegedly erroneous evidentiary and procedural rulings made by the trial court. Having considered the petition, Respondent's answer, and the balance of the record, the court hereby finds and rules as follows.

## PROCEDURAL HISTORY

On December 20, 2004, Petitioner was charged with: (1) assault with a deadly weapon upon a park ranger (Cal. Pen. Code, § 245(c)), attempting to commit violent injury upon peace officers in the performance of their duties (Cal. Pen. Code, § 241(b)), (2) seeking to resist an

1

officer in the performance of duty by means of force or threat, and (3) resisting an officer in the performance of his duty (Cal. Pen. Code, § 148(a)(10)). On March 1, 2005, a jury found Petitioner guilty of all charges except Count I, assault with a deadly weapon, and he was sentenced to a total state prison term of two years.[1] The California Court of Appeal, Third Appellate District, affirmed the judgment on May 14, 2007. On July 25, 2007, the California Supreme Court denied Petitioner's petition for review. On December 11, 2007, Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court, Eastern District of California. (Dkt. No. 1.) He also filed a motion for the appointment of legal counsel (Dkt. No. 3), which was granted on January 24, 2008. (Dkt. No. 6.) Petitioner filed an amended petition on October 2, 2008. (Dkt. No. 21.) The case was reassigned to this court on June 18, 2010. (Dkt. No. 29.)

## FACTS

Ranger McElheney and Ranger Safford, two Sacramento County park rangers, were patrolling the American River Parkway on the evening of October 12, 2004, following up on complaints that transients were "hanging out" and "drinking to the point of intoxication and becoming belligerent and making [bicycle commuters] feel[] very unsafe." (Dkt. No. 27, Lod. Doc. 1, Opinion of the Court of Appeal, Third Appellate District, filed May 11, 2007, at 1.) They approached a group of four people, which included Petitioner, and asked them to leave the bike trial. *Id*. Petitioner yelled profanities at the Rangers and refused to comply with their request. *Id*. The ensuing confrontation, which Petitioner and the Rangers describe differently, resulted in Petitioner's arrest and conviction. *Id*.

---

[1] Petitioner was incarcerated in the California Department of Corrections and Rehabilitation. He was released from actual custody on August 13, 2007, but remains on active parole with the state of California, Division of Adult Parole Operations.

GROUNDS FOR RELIEF

Petitioner raises the following grounds for relief:

1. The trial court erred when it denied Petitioner's *Batson/Wheeler* motion;

2. The trial court erred when it excluded evidence of the Rangers' reputation for harassing homeless people;

3. The trial court erred when it failed to instruct the jury that the offenses in Counts 4 and 5 required specific intent; and

4. The prosecutor committed prejudicial misconduct during closing arguments.

DISCUSSION

A.  *Standard of Review*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under the AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless Petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented. . . ." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this court must ascertain whether relevant federal law was "clearly established" at the time of the state court decision. To make this determination, the

3

court may only consider the holdings, as opposed to *dicta*, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id*. at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable." *Id*. at 411. It is the petitioner's burden to establish that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

AEDPA also requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Federal courts are bound by a state's interpretation of its own laws. *See Murtishaw v. Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (*citing Powell v. Ducharme*, 998 F.2d 710, 713

4

(9th Cir. 1993)). This deference, however, is accorded only to "reasoned decisions" by the state courts. To determine whether the petitioner has met this burden, a federal habeas court looks to the last reasoned state court decision because subsequent unexplained orders upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

B.   *The Batson/Wheeler Motion*

There were three African-Americans on the panel of potential jurors for Petitioner's trial. After *voir dire*, the prosecutor used her second and third peremptory challenges to dismiss two of the African-Americans.[2] Petitioner made a *Batson/Wheeler* motion, arguing that there was not any reason other than race for excusing the two jurors.  The trial court denied the motion, ruling that the defense had failed to make a prima facie case of bias, but allowed the prosecutor to make a record of her reasons for excusing the two jurors. On direct appeal Petitioner argued that the trial court erred under *Johnson v. California*, 545 U.S. 162 (2005) and *Miller-El v. Dretke*, 545 U.S. 231 (2005) because the record shows that he raised an inference of bias based on statistical disparity.

The appellate court rejected this argument. (Dkt. No. 27, Lod. Doc. 1 at 9.) The court noted that Petitioner's trial took place shortly before the United States Supreme Court decided *Johnson*[3] and the record did not demonstrate clearly which standard the trial court used.

---

[2] The District Attorney ultimately excused 18 members of the panel.

[3] In *Johnson*, the United States Supreme Court resolved a conflict between federal law and California law on the proof required to establish a prima facie case of bias under *Batson*, rejecting *Wheeler's* "more likely than not" standard in favor of *Batson's* "inference of discriminatory purpose." *Johnson*, 545 U.S. at pp. 164, 168. Under *Batson*, as reaffirmed by *Johnson*, courts must follow a three-step process in determining whether the prosecutor violated a defendant's constitutional rights. *Id*. First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to

5

Accordingly, the appellate court reviewed the record de novo, applying the *Johnson* standard. The appellate court noted that the two jurors' responses to the prosecutor's questions provided race-neutral justification for excusing them. Both jurors described negative personal experience with law enforcement, in fact, the trial court observed that one of the jurors "was a borderline for cause case."[4] (Dkt. No. 27, Lod. Doc. 1 at 192.) In addition, the court noted that the prosecutor did leave one African-American juror on the jury. *Id*. Based on its independent review of the record, the appellate court concluded that Petitioner "failed to establish a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'" (Dkt. No. 27, Lod. Doc. 1 at 11 *quoting Johnson*, 545 U.S. at 168.)

Petitioner objects to the appellate decision, arguing that the court failed to rule on the first prong of the *Batson* framework and instead addressed the three prongs collectively. (Dtk. No. 21 at 8.) Petitioner contends that if the state court had correctly applied the legal standard, it necessarily would have found that he established a prima facie case of an inference of discrimination based on the statistical disparity of the prosecutor's peremptory challenges. *Id*. at 7.

A defendant satisfies the requirements of *Batson's* first prong "by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Williams v. Runnels*, 432 F.3d 1101, 1106 (9th Cir. 2006) quoting *Johnson*, 545 U.S. at 170. The

---

explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Id*.

[4] Diane T., a non-practicing attorney, described witnessing police officers beat an alleged perpetrator and claimed that her house was once surrounded by bounty hunters impersonating police officers. Anita W. told the court that one of her daughters was in prison and the other daughter was a defendant in a pending criminal case. She stated that she believed that one or both of her daughters was not treated fairly and equivocated on the question of whether she could be fair to both sides in light her experience with law enforcement.

6

burden of persuasion remains with the defendant, it is not until the third step of the *Batson* framework that the persuasiveness of the prosecutor's justification becomes relevant. *Williams*, 432 F.3d at 1106. Here, Petitioner established that he is African-American and that the prosecutor used two of her first three peremptory challenges to remove African-Americans from the jury. These bare facts present a statistical disparity. The Ninth Circuit has held that a defendant can make a prima facie showing based on a statistical disparity alone. *Id*. at 1107, citing *Fenandez v. Roe*, 286 F.3d 1073, 1077-80 (9th Cir. 2002). However, a trial court must also consider any other relevant circumstances brought to its attention that may refute an inference of discriminatory purpose. *Williams*, 432 F.3d at 1107. In order to rebut an inference of discriminatory purpose based on statistical disparity, the other relevant circumstances must do more than indicate that the record would support race-neutral reasons for the questioned challenges. *Id*. at 1108.

In this case, the trial court articulated its reasons for denying the *Batson/Wheeler* motion, and allowed the prosecutor to state for the record her rationale for exercising her strikes. After reviewing the record in its entirely, this court finds that the appellate court's conclusion that other relevant circumstances refuted the inference of bias raised by the statistical disparity is neither contrary to nor an unreasonable application of Supreme Court authority. *See Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003); *Holland v. Jackson*, 542 U.S. 649, 655 (2004) (noting that § 2254(d)'s "highly deferential standard for evaluating state-court rulings" is a standard that demands that state-court decisions be given the benefit of the doubt). Accordingly, this claim will be dismissed.

C.     *The Reputation Evidence*

At trial Petitioner sought to introduce evidence that Rangers McElheney and Safford had a reputation for being physically aggressive towards the homeless under California Evidence Code § 1103. The trial court conducted an Evidence Code § 402 hearing to determine the admissibility of the evidence. The court heard testimony from Vera Barter, a social worker at a local homeless shelter, and Diane Evans, a homeless acquaintance of Petitioner. Ms. Barter testified that she had worked at the local homeless shelter for eight years and, while she had never met any of the park rangers who worked in the vicinity, she had heard complaints about them. She testified that guests of the homeless shelter "complained of the rangers targeting specific guests, being rude, not treating anyone with any type of respect...." (Dkt. No. 27, Lod. Doc. 1 at 15.) However, Ms. Barter had not heard that the rangers were physically violent with the homeless campers. *Id*. As to Ranger Safford, Ms. Barter testified that there were rumors that he was responsible for the death of several dogs. *Id*.

Ms. Evans testified that she had known Rangers McElheney and Safford for several years and that Ranger Safford had been "disrespectful or rude to her in the past." *Id*.[5] She also testified that park rangers had confiscated and damaged her property numerous times and she suspected that Ranger Safford had hurt her dog because the dog did not like him. *Id*. at 15-16. She stated that it was her opinion that Rangers McElheney and Safford were not aggressive towards the homeless campers. *Id*. at 16.

At the conclusion of the 402 hearing, the trial court excluded the evidence as "barely relevant." The trial court noted that Ms. Barter had no personal knowledge of any of the park rangers' conduct and Ms. Evans' testimony was that "the [Rangers] were not inconsistent with [the homeless campers]...[were] simply doing their job...that they were not disrespectful and

---

[5] Initially Ms. Evans testified that the Rangers were not disrespectful or rude, but changed her testimony when pressed by the defense. *Id*.

rude. (Dkt. No. 27 Lod. Doc. 1 at 30 and 66.) On appeal, Petitioner argued that the trial court disregarded the standard for admission of evidence under Cal. Evid. Code §§ 1103 and 352, and abused its discretion in excluding the evidence. The appellate court disagreed, holding that the trial court did not abuse its discretion in concluding that the evidence's probative value was outweighed by the probability that its admission would result in an undue consumption of time. *Id*. at 18.  Ms. Barter's testimony that park rangers, in general, and Ranger Safford in particular, had a reputation for being rude was of minimal relevance to the question of whether Rangers McElheney and Safford had a reputation for being physically aggressive towards the homeless campers, and Ms. Evans specifically testified that, in her opinion, Rangers McElheney and Safford were *not* physically aggressive in their interactions with the campers. *Id*. at 17-18.

Petitioner argues that the trial court's exclusion of the reputation evidence denied him his Sixth Amendment right to present a complete defense and to effectively cross-examine the Rangers. (Dkt. No. 21 at 11.) He argues that the Rangers' conduct and alleged aggressiveness during the incident with Petitioner is relevant to the guilty verdict as to Counts Four and Five— resisting arrest. (Dkt. No. 26 at 2.) He claims that the Rangers, through their aggressive mannerisms and verbal intimidation, escalated the incident until he was arrested for resisting arrest.[6] *Id*. at 6.

---

[6] Petitioner also argues that the appellate court erroneously limited its analysis of the trial court's ruling to whether the ruling with appropriate under California Evidence Code § 352 and did not address Petitioner's Sixth Amendment due process claim. *Id*. The pertinent question is not whether the appellate court explicitly discussed the constitutional implications of his Sixth Amendment claim but whether its decision contradicted applicable Supreme Court precedent in its reasoning or result. *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005). A reasonable application of established federal law "does not require citation of [United States Supreme Court] cases—indeed, it does not even require awareness of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

Petitioner has not demonstrated that the rejection of his claim was either "contrary to" or involved an "unreasonable application" of clearly established federal law. 28 U.S.C. § 2254(d)(1). The finding of relevance by the trial court, predicated on offers of proof adduced at trial, was based on California rules of evidence. "[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that state law admissibility questions raise no federal habeas issues). In addition, there is no federal precedent that requires the admission of "barely relevant" evidence; rather, state courts have a "wide latitude" to exclude evidence that is "repetitive" or "marginally relevant." *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986) Accordingly, there is no basis for federal habeas relief on this claims. *See Williams v. Taylor*, 529 U.S. 362, 411 (2000) (holding that at all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable").

D. *Prosecutorial Misconduct*

Both Rangers testified during Petitioner's trial that they were patrolling the American River Parkway on the evening of the incident in question in response to several complaints their department had received from bicycle commuters who frequent the area going to and from work. The complaints did not specifically reference Petitioner and the prosecutor reassured the trial court that she would not attempt to link the generic complaints to Petitioner. However, during closing arguments, the prosecutor made the following statement:

> But, as Ranger Safford told us, not only were they concerned for their own safety, but because of the context of the contact that they had, these complaints that Mr. Dugger is out of control, and berserk, and he's armed with this large knife that these officers—

(Dkt. No. 27, Lod. Doc. 1, Opinion of the Court of Appeal, Third Appellate District, at 28.)

Defense counsel objected and the trial court stated:

> Overruled. Ladies and gentlemen, the counsel will respectively be describing the evidence from their own perspectives. They're both doing it in good faith. It's up to you ultimately to decide what the evidence is and what you conclude the facts support.

*Id.* On appeal, Petitioner argued that the prosecutor's intentional misstatement of the evidence to the jury rendered his conviction fundamentally unfair. The appellate court found: "A review of the record shows that the prosecutor misstated the evidence. The [R]angers did not testify that they were following up on 'complaints' that specifically referred to defendant, described anyone as 'out of control' or 'berserk,' or mentioned a knife." Nevertheless, relying on *Darden v. Wainwright*, 477 U.S. 168 (1986), the appellate court concluded that the challenged statement "did not establish a pattern that 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'...The court cured any prejudice with its immediate admonition and later instruction that '[s]tatements made by the attorneys during trial are not evidence.'" (Dkt. No. 27, Lod. Doc. 1, Opinion of the Court of Appeal, Third Appellate District, at 24.)

Courts in federal habeas cases review claims of prosecutorial misconduct "to determine whether the prosecutor's remarks 'so infected the trail with unfairness as to make the resulting conviction a denial of due process.'" *Hall v. Whitley,* 935 F.2d 164, 165 (9th Cir. 1991) *quoting Donnelly v. DeChrisoforo*, 416 U.S. 637, 643 (1974). This standard allows a court in a federal habeas proceeding to grant relief when the state-court trial was fundamentally unfair but avoids interfering in state-court proceedings when errors fall short of constitutional magnitude. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000). In reviewing a claim of prosecutorial misconduct, the

court examines the challenged conduct to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990). Depending on the case, a prompt and effective admonishment of counsel or curative instruction from the trial judge may effectively "neutralize the damage" from a prosecutor's error. *U.S. v. Weitzenhoff*, 35 F.3d 1275, 1291 (9th Cir. 1993).

This court has reviewed the record in this matter, including the closing arguments challenged by this claim and finds that the state court's rejection of Petitioner's prosecutorial misconduct claim was neither contrary to nor an unreasonable application of controlling principles of federal law. This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger v. Hamilton*, 407 U.S. 25, 92 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Grin v. California*, 380 U.S. 609 (1965). The prosecutor's comment, while indeed a misstatement, did not render Petitioner's trial fundamentally unfair. The statement was brief, not repeated, and immediately followed by an admonition from the trial court that it was up to the jury to determine what the evidence showed. The jury was also instructed that the arguments of the attorneys' do not constitute evidence. (Dkt. No. 27 Lod. Doc. 1 at RT 367, CT 66-67.) Accordingly, this claim will be dismissed.

E.   *Jury Instructions*

Counts Four and Five charged Petitioner with "unlawfully attempt[ing] by means of threats and violence to deter and prevent" the Rangers from performing their duties and "knowingly resist[ing] by the use of force and violence" the Rangers in the performance of their

12

duties in violation of Cal. Pen. Code § 69. The trial court failed to instruct the jury on specific intent, a required element of the first prong of § 69. Petitioner raised this claim on direct appeal and the appellate court found it was error for the trial court to omit the element of specific intent in its instructions, but found the error to be harmless, stating that Petitioner suffered no prejudice because the evidence of Petitioner's verbal responses to and physical struggle with the Rangers reflected his clear and specific intent to prevent the Rangers from performing their duties. (Dkt. No. 27, Lod. Doc. 1, Opinion of the Court of Appeal, Third Appellate District, at 35.)

Petitioner's burden is to establish that the state court's failure to instruct on specific intent rose to the level of a federal constitutional error. Generally, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). To obtain federal collateral relief for errors in the jury charge, Petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72. The constitutional significance of the omission of an instruction will depend upon the evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 745 (9th Cir.1995); *see also Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Petitioner has not met his burden. The appellate court explained that under California law, there are two possible ways of violating Penal Code § 69: (1) attempting to resist, which requires specific intent, or (2) actual physical resistance, which requires general intent. The appellate court's interpretation of § 69 is binding on this court. *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir.1989) (federal courts are bound by state court rulings on questions of

state law). The written jury verdicts show that the jury convicted Petitioner on the second prong of § 69—actual resistance. (*See* Dkt. No. 27 Lod. Doc. 1 at CT 90-91.) Accordingly, the appellate court's finding that the instructional error was harmless is neither contrary to nor an unreasonable application of federal law. This claim will be dismissed.

## CONCLUSION

Based on the foregoing, the court HEREBY DENIES the Amended Petition for Writ of Habeas Corpus (Dkt. No. 21.) The case is DISMISSED.

DATED this 8th day of December, 2010.

/s/ Barbara Jacobs Rothstein

Barbara Jacobs Rothstein
U.S. District Court Judge